Charles R. **HAGGERTY**, Appellant,

v.

**USAIR, INC.**

No. 91–3248.

United States Court of Appeals,
Third Circuit.

Argued Oct. 1, 1991.
Decided Jan. 2, 1992.

---

Timothy P. O'Reilly (argued), Pittsburgh, Pa., for appellant.

Thomas E. Reinert, Jr. (argued), Alissa D. Aaronson, Morgan, Lewis & Bockius, Washington, D.C., for appellee.

Before SLOVITER, Chief Judge, COWEN and ROSENN, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Chief Judge.

On this appeal we must decide what is the appropriate statute of limitations for a private cause of action under the Employee Protection Program of the Airline Deregulation Act of 1978 (ADA or Act). Judicial search for a statute of limitations occurs, of course, only when the statute is silent, an inevitable by-product when the private right to sue on the claim has not been set out explicitly in the statute. That is the situation with the claim in question, filed under the Act's Employee Protection Program, a "sunset" provision that expired in 1988, that contained neither an explicit right to sue[1] nor a statute of limitations. We must resolve a division among the district courts of this circuit as to the applicable statute of limitations period, and decide whether the statute of limitations to be used is to be found in a state or federal source.[2]

I.

*Facts and Procedural History*

Plaintiff Charles R. Haggerty was an air frame and power plant mechanic with Eastern Airlines from 1968 until 1987. On March 6, 1987, Haggerty, who was then working at Eastern's Pittsburgh facility, received notice that he was going to be laid off as part of a work force reduction. Under the collective bargaining agreement between Haggerty's union, the International Association of Machinists, and Eastern,

Haggerty then had a choice: either he could use his seniority to "bump" less senior mechanics in other Eastern locations or he could accept the layoff with severance pay and recall rights to Pittsburgh. Because Haggerty had nineteen years of seniority at the time, he could have bumped to almost any maintenance station in the Eastern system. Haggerty's initial reaction to his layoff was to protect his employment and he filed the appropriate papers so that he could bump a less senior employee in Cleveland.

Shortly after submitting those papers, Haggerty became aware of the Employee Protection Program of the Airline Deregulation Act (ADA), 92 Stat. 1705 (codified at various sections of Title 49 U.S.C. app.). Under the relevant provision,

> Each person who is a protected employee of an air carrier which is subject to regulation by the Civil Aeronautics Board who is furloughed or otherwise terminated by such an air carrier ... *shall have first right of hire ... by any other air carrier hiring additional employees....* Any employee who is furloughed or otherwise terminated (other than for cause), and who is hired by another air carrier ... shall retain his rights of seniority and right of recall with the air carrier that furloughed or terminated him.

49 U.S.C. app. § 1552(d)(1) (1988) (emphasis added).

Haggerty knew that USAir was hiring mechanics in his home city of Pittsburgh at the time. Therefore, based on what he had learned about the ADA program, Haggerty rescinded his bumping request at Eastern and applied for a job as a mechanic with USAir in Pittsburgh. Haggerty was interviewed by USAir on May 12, 1987, and his application was rejected on June 24, 1987.

---

**1.** USAir does not contest Haggerty's right to enforce the duty-to-hire provisions of the Act. *See Long v. Trans World Airlines,* 913 F.2d 1262, 1265 (7th Cir.1990).

**2.** Fortunately, inquiries such as we are obliged to make in this case will not recur with new legislation because in 1990, Congress, at the

urging of the Federal Courts Study Committee, filled the interstices in federal law by the enactment of a residual four-year statute of limitations. Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 313(a), 104 Stat. 5114, 28 U.S.C.A. § 1658 (West Supp.1991).

Shortly thereafter, Haggerty retained counsel who wrote to USAir in September 1987, and received no answer. Meanwhile, in August 1987, Haggerty wrote to the Department of Labor and received a response in November 1987, advising him that he could pursue a private cause of action under the ADA. In March 1988, Haggerty was hired by United Parcel Service, where he is currently employed as a mechanic.

On March 19, 1990, more than two years after USAir rejected his application, Haggerty filed the present action, asserting that USAir's failure to hire him violated the Airline Deregulation Act. Haggerty seeks instatement as an employee at USAir's Pittsburgh terminal, back wages and benefits, and restoration of seniority and bidding rights retroactive to the time he claims he should have been hired.

After discovery, USAir moved for summary judgment on three bases. USAir argued, first, that the action was time-barred because it was commenced two years and eight months after the alleged violation, and, second, that Haggerty was not covered by the Employee Protection Program of the Airline Deregulation Act because he voluntarily accepted layoff instead of exercising his bumping rights under the collective bargaining agreement. Finally, USAir asserted that Haggerty's rejection was justified because he did not meet USAir's employment requirements for airline mechanics.

The district court referred USAir's motion for summary judgment to a magistrate judge who recommended that the motion be granted. After giving the parties an opportunity to object, the district court adopted the magistrate judge's report and recommendation verbatim, holding that the six-month statute of limitations under section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. 160(b) (1988), should be applied or, in the alternative, that the 180–day period under the Pennsylvania Human Relations Act, 43 Pa.Stat.Ann. § 959(g) (1991), was applicable. Thus, Haggerty's claim was time-barred. As an alternative ground for summary judgment,

the court held that inasmuch as Haggerty had not exercised his bumping rights, he had voluntarily accepted layoff and was therefore not entitled to benefit from the duty-to-hire provision of the ADA.

We have jurisdiction over Haggerty's timely appeal pursuant to 28 U.S.C. § 1291 (1988). We give plenary review to a grant of summary judgment. *Waldorf v. Shuta*, 896 F.2d 723, 728 (3rd Cir.1990). Because we conclude that Haggerty's claim was subject to a six-month statute of limitations, we need not reach the question whether Haggerty's failure to exercise his seniority rights under the collective bargaining agreement barred him from coverage under the Employee Protection Program.

## II.

### *"Borrowing" Statutes of Limitations*

■ As a general principle, when a federal statute fails to provide explicitly for a statute of limitations, the courts assume that Congress intended them to apply the statute of limitations from an analogous state statute. *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987); *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). The Supreme Court recently reiterated the principle that "analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies." *Reed v. United Transp. Union*, 488 U.S. 319, 327, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989). Nonetheless, the Court has recognized that "[i]n some circumstances ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law," and in such cases timeliness rules should be taken from federal law. *DelCostello*, 462 U.S. at 161–62, 103 S.Ct. at 2289; *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977) ("State legislatures do not devise their limitations periods with national interests in mind....").

In *DelCostello*, the Supreme Court was faced with the question of which statute of limitations to apply to a "hybrid" suit containing claims by employees against their unions alleging breach of the unions' duty of fair representation and claims by the employees against their employers under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging a breach of the collective bargaining agreement. Although the Court two years earlier had held that an employee's suit against the employer was governed by a state statute of limitations for vacation of an arbitration award rather than by a state statute for an action on a contract, *see United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), in *DelCostello* the Court explained that *Mitchell* was limited to a choice between two state statutes of limitations. 462 U.S. at 165–66, 103 S.Ct. at 2291–92.

In *DelCostello*, the Court was called upon to decide whether the state or a federal statute of limitations should be applied. The Court reiterated the general principle as to borrowing state statutes of limitations, but stated that it has "not hesitated" to turn away from state law "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294.

In *DelCostello*, the Court chose to apply the six-month period under section 10(b) of the NLRA for filing charges of unfair labor practices. It explained that the state statutes did not provide appropriate analogies. On the other hand, section 10(b) was designed to accommodate a balance of interests similar to those at stake in a hybrid claim—"the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining

system." *Id.* at 171, 103 S.Ct. at 2294 (quoting *Mitchell*, 451 U.S. at 70, 101 S.Ct. at 1567 (Stewart, J., concurring)).

Thereafter, in *Agency Holding Corp.* the Court was faced with the question of the appropriate statute of limitations for a civil RICO claim. The Court began its consideration with an inquiry into "whether all claims arising out of the federal statute 'should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case.'" 483 U.S. at 147, 107 S.Ct. at 2762 (quoting *Wilson v. Garcia*, 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985)). The characterization of the claim in this manner is a question of federal law. *Wilson*, 471 U.S. at 268, 105 S.Ct. at 1938. As Justice O'Connor's opinion in *Agency Holding Corp.* demonstrates, such characterization really entails an analysis of whether claims under a statute are enough alike so that a uniform statute of limitations should be applied to all of them, at least on a state-by-state basis.[3] In light of the fact that RICO embraced a wide variety of predicate acts and the concepts under RICO of "enterprise" and "pattern of racketeering activity" were unknown to common law, the Court determined that a uniform statute of limitations for civil RICO was desirable "to avoid intolerable 'uncertainty and time-consuming litigation.'" 483 U.S. at 150, 107 S.Ct. at 2764 (quoting *Wilson*, 471 U.S. at 272, 105 S.Ct. at 1944).

Having decided that the claims under the statute should be treated similarly, the Court turned to the second step under *DelCostello* which requires a determination whether the federal policies at stake in the federal law require that the Court borrow a uniform, federal time period for bringing claims. The Court noted that the federal policies at stake in RICO claims made a uniform federal time period desirable, in part because the predicate acts often involved interstate transactions which could

---

**3.** In *Wilson,* the Court noted that a finding that uniformity is desirable does not lead automatically to an application of a nationally uniform

statute of limitations: uniformity within each state is also an option. 471 U.S. at 275, 105 S.Ct. at 1946.

lead to statutes of limitations from more than one state governing one RICO claim. 483 U.S. at 153, 107 S.Ct. at 2765. After considering various statutes, the Court adopted the four-year Clayton Act statute of limitations because of "the similarities in purpose and structure between RICO and the Clayton Act, [and] the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton Act." *Agency Holding Corp.*, 483 U.S. at 152, 107 S.Ct. at 2765.

A similar analysis had previously led the Court to apply the federal statute of limitations to unseaworthiness actions, *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958), and recently led the Court to apply to the implied private cause of action under section 10(b) of the Securities Exchange Act of 1934 the "one and three year" statute of limitations provided in section 13 of the Securities Act of 1933 and certain sections of the 1934 Act, rather than the proffered state statutes of limitations. *Lampf, Pleva, Lipkind, Prupis, & Petigrow v. Gilbertson*, — U.S. —, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

The Court reached a different result in *Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621. There the Court decided that a union member's claim that his union had violated his right to free speech under section 101 of the Labor–Management Reporting and Disclosure Act (LMRDA) was comparable to a personal injury claim under state law and should be governed by the state statutes of limitations for personal injury claims. The Court was persuaded that this section was similar to 42 U.S.C. § 1983 at issue in *Wilson* and that all claims under section 101 should be characterized in the same way. As in *Wilson*, the Court in *Reed* saw no reason to search beyond state law for a more analogous statute of limitations after concluding that the federal policies served by adopting the six-month limitation period of § 10(b) of the NLRA were only implicated "by tangential and contingent effects of ... [the] litigation." 488 U.S. at 328, 109 S.Ct. at 627.

Accordingly, to decide the appropriate statute of limitations for the Airline Deregulation Act, we must first ascertain if a uniform statute of limitations is necessary and, if it is, analyze the federal policies at stake in order to determine whether we should borrow a federal or state statute.

### III.

### *Airline Deregulation Act*

#### A.

### *Analysis of the Claim*

■ The Airline Deregulation Act, as its name implies, represents the decision of the executive and legislative branches to change the extensively regulated structure of the airline industry. It is clear from the legislative history that Congress added the Employee Protection Program (EPP) in response to organized labor's opposition to deregulation because the unions feared there would be a massive job loss if and when airlines failed after the introduction of competitive practices. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 691–93, 107 S.Ct. 1476, 1483–84, 94 L.Ed.2d 661 (1987); S.Rep. No. 95–631, 95th Cong., 2d Sess. 114 (1978); 124 Cong.Rec. 10,650 (1978). The EPP, which was intended to lessen the impact on adversely affected employees, gave a protected employee not only a "first right of hire" by any other air carrier but also a right to recall and retention of seniority in his or her original air carrier employer. However, it was designed to be in effect for only ten years. 49 U.S.C. app. § 1552(d)(1) (1988).

Looking first to whether claims under the statute should be treated uniformly, we conclude that it is clear that they should. The claims brought for violation of the right-to-hire provision all arise out of a similar factual matrix. The only airline employees who are "protected" and have rights under 49 U.S.C. app. § 1552(d) are those who were employed for at least four years as of October 24, 1978 by an airline that was subject to regulation by the Civil Aeronautics Board and were furloughed or terminated prior to October 24, 1988.

Claims under the EPP should be characterized as uniform because in fact they are uniform. They merit uniform treatment even more so than claims under civil RICO or section 1983 which were held to require uniform characterization because of the otherwise unmanageable diversity in their underlying or predicate acts. *See Agency Holding Corp.,* 483 U.S. at 149–50, 107 S.Ct. at 2763–64; *Wilson,* 471 U.S. at 272–75, 105 S.Ct. at 1944–46. Moreover, as with claims under section 101 of the LMRDA, the goal of the EPP legislation was to create a speedy and effective right for a specific group of employees. Achievement of that goal would be obstructed if there were uncertainty over the collateral matter of the applicable statute of limitations. *See Reed,* 488 U.S. at 326, 109 S.Ct. at 626.

## B.

### Federal or State Statute

In determining whether a federal statute of limitations or the statute of the relevant state should be applied, we look not only to whether a federal statute provides a closer analogy to a cause of action under the EPP but also to the federal policies at stake. It is evident that this is a situation, as in *DelCostello,* where "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law," 462 U.S. at 161, 103 S.Ct. at 2289, and a federal statute provides a closer analogy. Because the first right of hire that a protected employee enjoys is for employment in any other carrier that is hiring employees, a number of state statutes of limitations may be implicated. It happens that Haggerty is claiming that right in his home city of Pittsburgh, but he could just as easily be claiming it as to an airline in Dallas or San Francisco.

A lack of uniformity among the many state jurisdictions in which the furloughed employee could decide to exercise his or her right can cause uncertainty for both employees and employers. The timeliness of suit would depend on the particular airline to which the employee applied, and possibly also on the particular job site. Indeed, the carriers would have difficulty managing a cohesive policy with respect to the EPP were they subject to the varying limitations periods of each of the states in which they operate. Hiring decisions require consideration of many factors, including collective bargaining agreements and seniority concerns, and if the carriers were subject to varying state limitations periods they could not " 'calculate their contingent liabilities, not knowing with confidence when their delicts lie in repose.' " *Agency Holding Corp.,* 483 U.S. at 150, 107 S.Ct. at 2764 (quoting *Wilson,* 471 U.S. at 275 n. 34, 105 S.Ct. at 1946 n. 34).

Moreover, it is not easy to find a state limitations period that is an appropriate analogy. *Cf. UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (finding an obvious and close analogy between the claim at issue under section 301 of the LMRA and an ordinary breach-of-contract case). Haggerty suggests two Pennsylvania laws with statutes of limitations that would be long enough to encompass his claim. He suggests the six-year Pennsylvania residual statute of limitations, 42 Pa.Cons.Stat.Ann. § 5527 (Supp.1991), or the three-year time limit under the Pennsylvania Wage Payment and Collection Law, 43 Pa.Stat.Ann. § 260.1 *et seq.* (1991). The first offers no analogy, it is simply a fallback position. The Supreme Court has resisted borrowing state residual provisions for federal statutes because it is "unlikely that Congress would have intended such a statute of limitations to apply." *Agency Holding Corp.,* 483 U.S. at 153, 107 S.Ct. at 2765. The wage payment law is for payment of wages to employees, not for hiring claims, and it is premised on a contractual obligation that an employer has to pay wages and benefits, not a statutory right like the one here.[4]

---

**4.** Haggerty does not proffer (because his claim would be untimely) the six-month limitations period in the Pennsylvania Human Relations

Act, 43 Pa.Stat.Ann. § 959(g) (1991), which was the district court's alternate choice. Although the Human Relations Act is somewhat similar

It is evident that federal policies at stake in the ADA and the "multistate nature" of the EPP claims "indicate[ ] the desirability of a uniform *federal* statute of limitations." *Agency Holding Corp.*, 483 U.S. at 154, 107 S.Ct. at 2766 (emphasis added).[5] Under these circumstances, we agree with USAir that section 10(b) of the NLRA, which provides a six-month statute of limitations for filing charges of unfair labor practice with the National Labor Relations Board, 29 U.S.C. § 160(b) (1988), offers a close analogy. An employee asserting the right to first hire under the EPP is in an analogous position to a permanently replaced economic striker who has six months to file charges of unfair labor practice if s/he has not been reinstated after the replacement quits or is terminated. *See Harvey Eng'g & Mfg.*, 270 N.L.R.B. 1290, 1292–93 (1984). Moreover, as with the NLRA, the Department of Labor has had a role in administering the EPP, as the agency charged with maintaining a listing of airline vacancies for the use of protected employees under the EPP. *See* 49 U.S.C. app. § 1552(d)(2) (1988); 29 C.F.R. §§ 220.-22–.25, 220.40–.41 (1991).

Although Haggerty contends that the six-month period is too short, we believe that the policy underlying the ADA would be served by adopting the NLRA's six-month time period. In adopting that period as applicable to hybrid claims under section 301 of the LMRA in *DelCostello*, the Supreme Court recognized "the close similarity of the considerations relevant to the choice of a limitations period." 462 U.S. at 170–71, 103 S.Ct. at 2293–94. The six-month period under the NLRA reflects the need for the speedy resolution of labor disputes because of the effect of the remedy, *e.g.*, instatement, retroactive seniority, etc., on other workers. Similarly, a successful EPP claimant's remedy would affect, for example, the seniority relationships of other employees, even if those employees were not members of a union.

We are cognizant that in *Gonzalez v. Aloha Airlines*, 940 F.2d 1312 (9th Cir. 1991), the Ninth Circuit declined to borrow the six-month statute of limitations from the NLRA on the ground that the EPP applies to airline employees regardless of whether the employer signed a collective bargaining agreement. For this reason, that court held that the policy behind the EPP "does not directly involve the relationships between unions and their members or between unions and employers" as the NLRA policy does. *Id.* at 1315. We agree instead with the district court's statement that

[i]t oversimplifies the matter to conclude that, since the duty-to-hire rights asserted by plaintiff do not arise from a collective bargaining agreement, that no impact will be felt in the collective bargaining process. Indeed, the seniority rights, salary, and placement to which plaintiff asserts he is entitled in recompense ... are all products of the collective bargaining process.

App. at 201. Given the fact that the level of unionization in the airline industry is nearly 90 percent, *see* C. Raymond Grebey, Jr., *A Management Perspective*, in *Cleared For Takeoff: Airline Labor Relations Since Deregulation* 40 (J. McKelvey ed., 1988), and the program was inserted in the statute at the insistence of the unions, it would be unrealistic to distinguish the NLRA from the ADA based only on the

---

insofar as it prohibits improper factors, such as *inter alia*, race, religion, age, and sex, from coming into play in hiring determinations, *see* 43 Pa.Stat.Ann. § 955 (1991), it is a general statute applicable to the entire population of Pennsylvania. The EPP, on the other hand, applied only for the benefit of a limited group for a short period of time, and it required, rather than prohibited, preferential hiring.

**5.** For the reasons set forth in the text, we do not believe that the state tort statute of limitations,

adopted for an EPP claim in *McDonald v. Piedmont Aviation Inc.*, 930 F.2d 220, 224–25 (2d Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991), is the appropriate limitations period for such a claim. We note that Haggerty does not proffer the Pennsylvania two-year tort limitations period set forth in 42 Pa. Cons.Stat.Ann. § 5524(7), again apparently because his complaint was filed more than two years after his rejection by USAir.

absence of an explicit statutory reference to unions.[6]

We conclude that a six-month statute achieves the proper resolution of the national interest in deregulation, the airlines' interest in repose, and the dislocated employee's need to obtain prompt employment.

## IV.

### Conclusion

We recognize that there is some anomaly in analyzing the issue before us from the perspective of the interests of the parties in a program that has since expired. It is, nonetheless, the analysis that we are bound to apply. In fact, the very transitory nature of the EPP suggests the inadvisability of a statute of limitations that would far outlast the last effective date of the program.

For the foregoing reasons, we hold that the six-month statute of limitations from section 10(b) of the NLRA applies to claims under the Employee Protection Program of the Airline Deregulation Act. Because Haggerty filed his claim more than two years after the alleged violation, his action is time-barred. We will affirm the district court's order granting USAir's motion for summary judgment.

---

**6.** It is noteworthy that with the enactment of the ADA, the Department of Transportation (DOT) took over its administration from the Civil Aeronautics Board. The DOT "made clear that in its view the impact of airline mergers on employees was entirely a matter for collective bargaining, not regulatory action." *See* Robert H. Nichols & Wesley Kennedy, *Seniority Integration in the Absence of Mandatory Labor Protective Provisions,* in *Cleared for Takeoff: Airline Labor Relations Since Deregulation* 150 (J. McKelvey ed., 1988). Thus, there is a reasoned basis to borrow a statute of limitations from a statute applicable to a collective bargaining environment.