956 F.2d 999
 139 L.R.R.M. (BNA) 2557
 Charles BOWDRY, Bob Berger, Ralph Estill, James Hartzer,
Rich Kennon, Loren Mach, Glenn Mullins, Norman
Rankin, and Russell Estill, Plaintiffs,
and
Paul Hart, Milton Howard, and Dane Vannice, Plaintiffs-Appellants,
v.
UNITED AIR LINES, INC., Defendant-Appellee.
 No. 91-1054.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 13, 1992.
 
 John Mosby (Elisa Moran, with him on the briefs), Denver, Colo., for plaintiffs-appellants.
 Kris J. Kostolansky (Michael D. Nosler and Frank Lopez, with her on the brief) of Rothgerber, Appel, Powers & Johnson, Denver, Colo., for defendant-appellee.
 Before SEYMOUR, and ANDERSON, Circuit Judges, and Aldon J. ANDERSON, District Judge.*
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Appellants Paul Hart, Dane Vannice and Milton Howard appeal from a district court order granting summary judgment to United Air Lines, Inc. ("United") and dismissing their complaint against United for allegedly violating its duty to accord them their first right of hire under section 43(d) of the Airline Deregulation Act of 1978 (the "Act"), 49 U.S.C.App. § 1552(d).
 
 
 2
 Before us are two issues: first, whether appellants relinquished their first right of hire under section 43(d) of the Act by rejecting an offer for employment in their occupational specialty; and second, whether the district court properly held that the statute of limitations for actions brought under section 43(d) of the Act is six months. Because we find the district court improperly ruled on both issues, we reverse.
 
 I.
 
 3
 The appellants were employed with Frontier Airlines, Inc. ("Frontier") until Frontier ceased operations and filed for bankruptcy in August of 1986. During the Frontier bankruptcy proceedings, a motion was filed seeking approval of a Job Preservation Agreement (the "JPA") between Frontier, its parent, Continental Airlines, Inc. ("Continental"), and various Frontier unions representing appellants and other Frontier union employees. See Appellee's Appendix, Ex. C. The JPA was designed to eliminate the majority of claims against the Frontier estate in order to advance Continental's purchase and utilization of Frontier's assets. Under this agreement the participating employees would waive certain claims against Frontier and Continental, and in return receive either the opportunity to be employed with Continental, as vacancies became available, or a payment in cash and/or Continental flight passes. Id. Each appellant, foregoing the option to accept the employment opportunity, chose a payment of cash and/or passes. United presented evidence that had appellants chosen the employment option, they would have received employment in their occupational specialty from Continental. Appellants challenge the inference drawn from that evidence.
 
 
 4
 Subsequently, on different occasions, each appellant sought unsuccessfully to obtain employment with United. Appellants with other plaintiffs then brought an action against United, alleging that United failed to accord them their first right of hire to which they were entitled under section 43(d) of the Act. Upon United's motion for summary judgment, the district court dismissed the complaint as to the appellants, holding that they had lost their first right of hire prior to the time United refused to offer them employment. The district court also held in conjunction with a summary judgment motion against appellant Vannice, that a six month statute of limitations applied to his claim, although it denied summary judgment because there were still questions of material fact as to when the limitations period commenced.
 
 II.
 
 5
 In reviewing the district court's order, we must first decide whether the court properly ruled that the appellants were not protected employees that had been "furloughed or otherwise terminated" within the meaning of section 43(d) of the Act, and therefore not entitled to a first right of hire by United. In connection with this, we must consider United's argument that under section 43(d), taken as a whole, an employee that rejects an offer of employment in his or her occupational specialty by a covered airline relinquishes the first right of hire.
 
 
 6
 In reviewing a summary judgment order, we apply the same standard applied by the district court under Fed.R.Civ.P. 56(c). E.g., Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). The inquiry is whether there are any genuine issues of material fact, and whether the moving party was entitled to judgment as a matter of law. Id. "[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Investments, Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 7
 In enacting the Airline Deregulation Act, Congress included an Employee Protection Program (the "EPP") to protect airline employees from the potentially harsh consequences of deregulation. This program consists of two parts: a monthly assistance program for eligible employees that have been dislocated, and a duty by covered airlines to hire protected employees before hiring other, non-protected applicants. It is the latter that concerns us here. In relevant part, section 43(d) of the Act provides:
 
 
 8
 Each person who is a protected employee of an air carrier which is subject to regulation by the Civil Aeronautics Board who is furloughed or otherwise terminated by such an air carrier (other than for cause) prior to the last day of the 10-year period beginning on October 24, 1978 shall have first right of hire, regardless of age, in his occupational specialty, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this title prior to October 24, 1978. Each such air carrier hiring additional employees shall have a duty to hire such a person before they hire any other person, except that such air carrier may recall any of its own furloughed employees before hiring such a person.
 
 
 9
 49 U.S.C.App. § 1552(d)(1) (emphasis added).
 
 
 10
 Subsection (h)(1) defines a "protected employee" as "a person who, on October 24, 1978, has been employed for at least 4 years by an air carrier holding a certificate issued under section 1371 of this title." 49 U.S.C.App. § 1552(h)(1). There is no dispute that all appellants fall within that definition. Nor is there a dispute that both Frontier and United are air carriers holding a section 1371 certificate.
 
 
 11
 The initial dispute lies over the proper construction of the phrase "furloughed or otherwise terminated by such an air carrier (other than for cause)."
 
 
 12
 The rules and regulations promulgated by the Secretary of Labor under authority of section 43(f) of the Act, 49 U.S.C.App. § 1552(f), are relevant to this question. Tracking the language of the statute, these regulations provide that a person entitled to a first right of hire (a "designated employee") is a "protected employee who is involuntarily placed on furlough or is terminated by a covered air carrier during the eligibility period." 29 C.F.R. § 220.10(a). However, "a protected employee shall not be deemed to be furloughed or terminated" if such employee "resigned or voluntarily quit for any reason." 29 C.F.R. § 220.10(b)(6).
 
 
 13
 The district court relied on this language to dismiss the appellants' complaint. It equated the acceptance of severance benefits and the voluntary decision to "discontinue" working, albeit with another airline, with resigning or quitting. However, we cannot agree with that characterization. To have lost their entitlement, logically, the appellants would have needed to resign or quit from either Frontier or Continental. The appellants are quick to point out, with the record's support, that in fact, they never resigned or voluntarily quit the employ of Frontier and that they never resigned or voluntarily quit the employ of Continental.
 
 
 14
 It is beyond dispute, that the appellants were terminated by Frontier when it ceased its operations and declared bankruptcy. Opinion Letter, U.S. Department of Labor, Case No. 244B at 2 (March 29, 1988) ("Opinion Letter"), Appendix of Appellants, Tab 13, Ex. 2 ("There is no question that all the protected employees of the Frontier became eligible for designated status upon the cessation of airline operations by the carrier on August 24, 1986."). Likewise, it is beyond dispute that the appellants never worked for Continental and therefore could not possibly have resigned voluntarily from its employ. Further, the continuity between employment at Frontier and the potential employment at Continental was not such that the decision to refuse employment with Continental is tantamount to quitting the Frontier job. Cf. Id. (the JPA's provision for "employment at completely different airline" could not be viewed as a recall).
 
 
 15
 Recognizing this, United offers a variation on the district court's reasoning. While it does not (and cannot) base its argument squarely on any language of the statute or the regulations, it argues from the policy of the statute and by analogy to the regulations. The operative fact from United's perspective is that each employee rejected a ready-made offer by Continental for employment in his occupational specialty. (Although, in fact, the appellants rejected an offer to receive the right to an offer of employment, as jobs became available.) By doing so, argues United, the appellants relinquished their designated status. According to United, since the purpose of the Act was to provide designated employees with employment in their occupational specialty, should they involuntarily lose their jobs, an employee that has but rejects an offer in his or her occupational specialty is in the same position as others who lose their first right of hire, such as (1) a protected employee who has a job with a covered airline but quits or resigns, see 29 C.F.R. § 220.10(b)(6); (2) a designated employee who after having lost a job actually obtains a new one, see Opinion Letter at 2-3; or (3) a designated employee who is recalled by his former carrier, see 29 C.F.R. § 220.10(c). In this same regard, United relies on the position taken in Crocker v. Piedmont Aviation, Inc., 741 F.Supp. 241 (D.D.C.1989) (employee that received new employment with noncovered airline extinguishes first right of hire), which was reversed by the D.C. Circuit, see Crocker v. Piedmont Aviation, Inc., 933 F.2d 1024 (D.C.Cir.1991), and rejected by the Ninth Circuit in Gonzalez v. Aloha Airlines, 940 F.2d 1312, 1317 (9th Cir.1991).
 
 
 16
 It is the practice of this Court to interpret statutory language according to its plain meaning. Under the interpretation United offers, a designated employee applying for renewed employment with various airlines (offering different salaries and benefits), immediately upon rejecting the first and perhaps least desirable offer by one airline, loses his or her first right of hire as to any other airline. In United's view, designated employees have no right to "pick and choose" between available employment opportunities. We find nothing in the language of the statute or the regulations to sanction that result, and certainly, such a provision could easily have been written had Congress intended.
 
 
 17
 On the other hand, the three types of situations United cites can reasonably be grounded on the language of the statute. An employee that resigns or quits has not been involuntarily "furloughed" or "terminated" in the plain sense of those terms. Likewise, when the furloughed employee has been recalled by his former employer, the condition giving rise to the first right of hire--the furlough--has by definition ceased. Finally, even the proposition that a person loses the first right of hire upon obtaining employment (at least with a covered air carrier) finds reasonable support in the language; the whole object of the first right of hire has been realized--the employee has been "hired." There is no similar language on which to base the rule that a designated employee who rejects an offer of employment in his or her occupational specialty loses the first right of hire. Cf. Gonzalez v. Aloha Airlines, Inc., 940 F.2d 1312, 1317 (9th Cir.1991) (in rejecting the stronger claim that actual employment by non-covered airline terminates first right of hire, court notes that the Act "says nothing of the effect of [plaintiff's] employment with a non-covered airline on his EPP rights").
 
 
 18
 Further, this construction is bolstered by the related government assistance provisions of section 43. These provisions provide for monthly assistance to eligible, dislocated airline workers until they obtain other employment, or until the end of 72 months after the date of first payment. 49 U.S.C.App. § 1552(e). The duty to hire provision was adopted in conjunction with the monthly assistance program in part to reduce the burden on the federal government purse. McDonald v. Piedmont Aviation, Inc., 930 F.2d 220, 227 (2d Cir.1991); Crocker v. Piedmont Aviation, Inc., 933 F.2d 1024, 1027 (D.C.Cir.1991) (citing legislative history).[1] While these monthly payments may be reduced if a recipient rejects an offer for "reasonably comparable employment," 49 U.S.C.App. § 1552(b)(2), they are not terminated. Therefore, were we to extinguish the first right of hire upon a recipient's rejection of a job, under the statute the government would be required to continue making payments, and the first right of hire would not serve to shorten the duration of the government's obligations--a result that unreasonably defeats the purpose of the duty to hire.
 
 
 19
 Finally, we cannot say that the appellants' choice to take money in connection with the JPA instead of waiting for employment puts them in the same position as those fellow employees who lost their first right of hire upon commencing employ with Continental, assuming this is a correct description of their legal status, see Opinion Letter at 2-3. Under the JPA, the appellants could accept money and take their chances in finding new employment (with a first right of hire that by no means guarantees future employment), or they could accept the employment option and receive the right to an eventual offer of employment with a cut in salary and benefits. Id. at 2. Neither choice, though, should be viewed in the first instance as an opportunity to vindicate entitlements bestowed by the Act.[2] The choice between cash or a future offer of employment was simply a benefit that Continental offered to settle the employees claims against the bankrupt estate, paving the way for its purchase and rapid utilization of Frontier's assets. See Id. at 1. The appellants accepted immediate cash, giving up any rights they might have had of independently pursuing these claims against the estate. Certainly, under the Act there is nothing to suggest that had Frontier simply terminated these three employees (other than for cause) and paid them severance benefits or other amounts owed to them for some other reason, they would not be protected employees with first rights of hire by another covered airline. Therefore, for purposes of the act, we cannot equate the money appellants received in satisfaction of claims they had against Frontier with new employment by a covered air carrier, and we cannot hold as a matter of law that appellants lost their first right of hire under section 43(d).[3]
 
 III.
 
 20
 Next, we must decide whether the district court correctly found that a six month statute of limitations applies to the private right of action under the Act. Three circuits and a host of district courts have considered this issue, with differing results. See Haggerty v. USAir, Inc., 952 F.2d 781 (3d Cir.1992) (applying the six-month federal statute of limitations found in the NLRB); Gonzalez v. Aloha Airlines, Inc., 940 F.2d 1312 (9th Cir.1991) (applying state one-year statute of limitations for actions vindicating federal rights); McDonald v. Piedmont Aviation, Inc., 930 F.2d 220 (2d Cir.1991) (applying state three-year statute of limitations for tort actions); see also, e.g., Crocker v. Piedmont Aviation, Inc., 696 F.Supp. 685, 690-92 (D.D.C.1988) (applying the District of Columbia three-year catch-all statute of limitation for backpay); Punahele v. United Air Lines, Inc., 743 F.Supp. 758 (D.Colo.1990) (position taken by district court: six-month statute of limitations applies whether court adopts Colorado state law or statute of limitations found in the NLRB).
 
 
 21
 The question of the applicable statute of limitations is not an insignificant matter.[4] Surely, whether a protected employee's claim is extinguished in six months or six years has a great practical effect on the nature of the entitlement and hence on the political objectives Congress sought to obtain. But Congress remains silent on the issue.[5]
 
 
 22
 Limitations on a federal claim of right are grounded in federal law. DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 159 n. 13, 103 S.Ct. 2281, 2288 n. 13, 76 L.Ed.2d 476 (1983). Taking the law as we find it, we note that when Congress does not specify a statute of limitations, the settled practice is to presume that Congress intended the courts to apply the most analogous state law statute of limitations. Id.; see also Wilson v. Garcia, 471 U.S. 261, 266, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). This is a fiction, a default rule; it seems rather unlikely that in fact Congress intended that in Hawaii a valid claim is extinguished after one year, while Massachusetts employees get the benefit of a three-year statute. However, the presumption does give weight to certain state interests. Statutes of limitations promote policies of repose, providing for a period after which "even wrongdoers are entitled to assume that their sins may be forgotten." Id. at 271, 105 S.Ct. at 1944. "By adopting the statute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." Id.
 
 
 23
 This presumption is not unbending, however. "[W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." DelCostello, 462 U.S. at 171-72, 103 S.Ct. at 2294.
 
 
 24
 Nevertheless, if we are "to take seriously [the Supreme Court's] admonition that analogous state statutes of limitations are to be used unless they frustrate or significantly interfere with federal policies," Reed v. United Transportation Union, 488 U.S. 319, 327, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989), we must apply a Colorado state statute of limitations in this case. In reaching this decision, we join the Second and Ninth Circuits. See McDonald v.
 
 
 25
 Piedmont Aviation, Inc., 930 F.2d at 225 ("no reason to vary from the longstanding practice of adopting a state statute of limitations in the face of Congressional silence"); Gonzalez v. Aloha Airlines, Inc., 940 F.2d at 1315 (9th Cir.1991) ("Application of a state statute of limitations therefore would not, as in DelCostello, undermine federal policies."). And we must reject the position recently taken by the Third Circuit in Haggerty v. USAir, Inc., 952 F.2d 781 (3d Cir.1992).
 
 
 26
 The Third Circuit's decision to apply a federal instead of a state statute of limitations was based on the fact that an employee can attempt to exercise his right of first hire with several employers in several different states and that airlines could therefore be subject to a different limitations period in each of the states in which they operate. Citing Agency Holding Corp., the court determined that "if the carriers were subject to varying state limitations periods they could not ' "calculate their contingent liabilities, not knowing with confidence when their delicts lie in repose." ' " Haggerty, at 786. "Moreover," concluded the court, "it is not easy to find a state limitations period that is an appropriate analogy." Id. at 786.
 
 
 27
 We believe this analysis is mistaken. If this rationale were adopted there would hardly be occasion to adopt the state statute of limitations. Every time a state rule is adopted instead of a federal rule, an entity operating in various states will likely be subject to varying state statutes of limitations. Further, the single claim that may arise under the EPP is very dissimilar from the unlimited variety of claims arising under RICO, which the Court confronted in Agency Holding Corp., 483 U.S. at 149-50, 107 S.Ct. at 2764. Once the issue has been settled in a state as to which limitation applies, the matter is settled as to any future case arising under the EPP. To the contrary, under RICO, with its concepts of "enterprise" and "pattern of racketeering activity" and the various types of predicate offenses, which might have occurred in different states, any given case may create confusion over the proper limitations period. See 483 U.S. at 149-50, 107 S.Ct. at 2764.[6]
 
 
 28
 Further, the court's inability to find an "appropriate analogy" does not change our obligation to adopt a state statute. In DelCostello, the Court stated:
 
 
 29
 We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods.
 
 
 30
 462 U.S. at 171, 103 S.Ct. at 2294 (citation omitted).
 
 
 31
 The question then is which Colorado statute to apply. We hold that the proper statute to apply is Colo.Rev.Stat. § 13-80-102(1)(g), which applies a two-year limitation to "All actions upon liability created by a federal statute where no period of limitation is provided in said statute." See Gonzalez, 940 F.2d at 1316 ("Section ... therefore provides the most closely analogous state statute of limitations since it expressly applies to claims created by federal law.").
 
 
 32
 Arguing against this result, United asserts the same argument that has been applied to residual state "catch-all" provisions, namely that it is "unlikely that Congress would not have intended such a statute of limitations to apply." Agency Holding Corp., 483 U.S. at 153, 107 S.Ct. at 2765. This is a fiction upon a fiction. Not only is the Colorado statute not a residual "catch-all," but there is no reason to think that Congress would be less enthusiastic about the application of this statute than it would be over a different, yet analogous three-year statute applied in Massachusetts or a different, yet analogous one-year statute applied in some other state.[7] Nor is the EPP so unique that another analogous statute cannot be found in states without a similar provision. See id. (sui generis nature of RICO makes it inappropriate to apply catch-all, because in states without catch-all there would be no analogous state statute).
 
 
 33
 To the extent adoption of the most analogous state statute of limitations is designed to respect the state's decision as to when citizens may repose--as long as that decision does not frustrate federal policy--then clearly this is the statute that best serves that purpose. Unlike the ordinary case where neither Congress nor the state legislature, whose statute is adopted, in fact intended that the chosen statute be used, see note 7, supra, here at least Colorado has specifically weighed the interests of its citizens who may assert federal rights with the interests that its citizens have in obtaining repose. Given the length of the period, there is no reason to believe that Colorado intended to frustrate or discriminate against a citizen's vindication of federal rights. Therefore, in Congress' silence, we will defer to that judgment.
 
 
 34
 Further, to the extent the obligation of applying state law does not spring from the statute as a matter of federal law but instead recognizes the operation of state law ex proprio vigore, see Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143, 157-65, 107 S.Ct. 2759, 2767-72, 97 L.Ed.2d 121 (1987) (Scalia, J., concurring) (state statutes of limitation apply of their own force, unless pre-empted by federal law), or finds its inspiration in the Rules of Decision Act, 28 U.S.C. § 1652, see DelCostello, 462 U.S. at 172-74, 103 S.Ct. at 2295 (Stevens, J., dissenting) (Rules of Decision Act requires application of state statute of limitations); Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991) (practice of applying state statutes of limitations "derived from the Rules of Decision Act"), then again this statute would be the proper choice.
 
 
 35
 Accordingly, for the reasons stated above, and the judgment of the district court is REVERSED.
 
 
 
 *
 Honorable Aldon J. Anderson, Senior Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 In fact, the federal government reduced the burden on its purse by simply refusing to appropriate funds to the public assistance program. See Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 681, 107 S.Ct. 1476, 1478, 94 L.Ed.2d 661 (1987)
 
 
 [2]
 We do not find the language in the Opinion Letter controlling as to employees that accepted cash in lieu of employment. The letter simply does not address that issue. The reference to employees who "did sign the waiver and received the benefits of the Agreement," as the next sentence explicitly states, refers to those employees who "accepted a new job with a covered carrier." Opinion Letter at 2. Those employees that accepted the employment option but had not yet received an actual offer to commence employment were still designated employees until they actually began working for Continental. Id. Therefore, even acceptance of the employment option under the JPA did not automatically terminate an employee's first right of hire
 In this regard, we note that even if our analysis were to turn on whether or not appellants rejected an offer for reasonably comparable employment by a covered airline, the entitlement bestowed by the JPA's employment option was not an offer of employment in the usual sense. Under the terms of the JPA, those choosing the employment option would "be placed in seniority upon a guaranteed job offer list which Continental will use to fill future job opportunities as they become available." JPA, Appellee's Appendix at 323. Further, under the JPA a "Frontier employee may be obligated to accept employment in a city (metropolitan area) other than the city of his/her last employment at Frontier." Id. at 324-325. Whether the appellants would in fact have received an actual offer had they chosen the employment option, or whether in fact they would have remained in Denver are irrelevant. It was clear that the status of each appellant, as viewed ex ante under the JPA, was merely that of a "Frontier employee potentially eligible for a job offer from Continental." Id. at 326-27.
 
 
 [3]
 Despite the appellants' apparent willingness to make an issue of it, United has not attempted to argue that the waiver itself which appellants signed in connection with the JPA acted directly to waive their statutory rights under the Act as to United
 
 
 [4]
 Of course inherent in the statute is a sunset provision that will eventually make the question moot. Protected employees terminated after October 23, 1988, no longer obtain a first right of hire. 49 U.S.C.App. § 1552(d)(1)
 
 
 [5]
 The EPP in its current form leaves much of the legislative task undone. Section 43(d) pretends only to create a protected employee's "first right of hire" and the airlines' corresponding "duty to hire such a person before they hire any other person." 49 U.S.C.App. § 1552(d)(1). The courts have been left to write the rest of the statute, deciding whether Congress "intended" to create a private right of action, the nature of the appropriate remedy, the extent of damages (if that is the appropriate remedy), and the applicable statute of limitations
 
 
 [6]
 The court also found that all EPP claims should be treated uniformly "because in fact they are uniform." Haggerty, at 786. That decision misunderstands the nature of the inquiry. "Where a federal cause of action tends in practice to 'encompass numerous and diverse topics and subtopics,' such that a single state limitations period may not be consistently applied within a jurisdiction, we have concluded that the federal interests in predictability and judicial economy counsel the adoption of one source, or class of sources, for borrowing purposes. This conclusion ultimately may result in the selection of a single federal provision, or of a single variety of state actions." Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, --- U.S. ----, 111 S.Ct. 2773, 2779, 115 L.Ed.2d 321 (1991) (emphasis added) (citations omitted). Unlike a RICO claim or a 1983 claim, only one type of claim will arise under the EPP. In a given jurisdiction, a single type of statute of limitations can be consistently applied. Consequently, in this case, as in the ordinary case, the federal court must find in each state the statute that is "most analogous," which may vary from state to state
 
 
 [7]
 Cf. DelCostello, 462 U.S. at 169 n. 21, 103 S.Ct. at 2293 n. 21 (In response to Justice Steven's remark that there was no evidence that Congress intended analogous federal statute to be used in present context, Court responds: "With all respect, we think that this observation, while undoubtedly correct, is beside the point. The same could be said with equal or greater accuracy about the intent of the New York and Maryland Legislatures when they enacted their respective arbitration or malpractice statutes of limitations. In either situation we are applying a statute of limitations to a different cause of action, not because the legislature enacting that limitations provision intended that it apply elsewhere, but because it is the most suitable source for borrowing to fill a gap in federal law." (citation omitted))