**Hobart N. CROCKER, Jr., Plaintiff,**

v.

**PIEDMONT AVIATION, INC.,
Defendant.**

**Civ. A. No. 86–1673 (RCL).**

United States District Court,
District of Columbia.

Nov. 15, 1989.

Robert Matthew Beckman, Pierre Eric Murphy, David M. Kirstein, Beckman & Kirstein, Washington, D.C., for plaintiff.

Barbara L. Strack, Donald Tiffany Bliss, Jr., O'Melveny & Myers, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

Plaintiff Hobart N. Crocker, Jr. claims he had a right of first hire as a "protected employee" under section 43 of the Airline Deregulation Act of 1978, codified at 49 U.S.C.App. § 1552 (1982) ("the ADA"), and that defendant Piedmont's refusal to hire him gives rise to this cause of action. He seeks back pay and instatement, or, in lieu of instatement, front pay. Piedmont moves to strike portions of plaintiff's claim for relief because it claims that plaintiff's employment in his occupational specialty with Coral Air and subsequent resignation from that position work to deny plaintiff of his protected status after that resignation. Plaintiff opposes defendant's motion on the grounds that the statute and regulations specify only that subsequent employment in a "covered carrier" would remove Crocker's protected status. This court believes that the motion to strike is more properly termed a motion for summary judgment and will treat it as such.[1]

### The Airline Deregulation Act

The Airline Deregulation Act dismantled much of the regulation of the airline industry. Because Congress recognized that the industry was likely to suffer major upheavals because of the added competition, Congress added an employee protection provision that would help protect workers already in the airline industry during a tran-sition period of ten years. Plaintiff's statement of material facts as to which there is a genuine issue ("Plaintiff's statement of facts"), ¶ 3. A "covered air carrier" is one which was subject to regulation by the Civil Aeronautics Board, and thus was certified as of October 23, 1978 under the Federal Aviation Act of 1958. § 1552(d)(1). A "protected employee" is any person, other than an officer or director of a corporation, who had been employed for at least 4 years by a covered air carrier on October 24, 1978. § 1552(h)(1). A "designated employee" is a protected employee who, between October 24, 1978 and October 24, 1988, is involuntarily placed on furlough or is terminated by a covered air carrier due to either bankruptcy of the carrier or a "major contraction" resulting in reduction of at least 7½ percent of the total number of full-time employees of the carrier within a 12-month period. 29 CFR §§ 220.10 and 220.01(h); §§ 1552(h)(2) and (h)(4).

Under the ADA, a protected employee has a "first right of hire, regardless of age, in his occupational specialty" by a covered air carrier whenever it hires additional employees from outside its work force. 49 U.S.C.App. § 1552(d)(1). On the other hand, there is no required preference if the air carrier is hiring only from a pool of protected employees. Thus, a protected employee's claim arises when, and only when the covered air carrier hires a non-protected employee.

### Facts

Plaintiff Crocker was employed as a pilot by Air New England from 1973 until it ceased operations on October 31, 1981, an apparent victim of Congress' deregulation of the airline industry. Plaintiff's statement of facts, ¶ 1; *Crocker v. Piedmont Aviation*, 696 F.Supp. 685, 686 (D.D.C. 1988). On April 6, 1982, Crocker wrote to Piedmont, a "covered carrier" under the

---

1. Federal Rule of Civil Procedure 12(f) ("Upon motion ... or the court's own initiative ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.") Because this court has determined that defendant's motion to strike is in actuality a motion for summary judgment, and is treating it as such, it ordered the parties to provide the statement of material facts as to which there is no genuine dispute and statement of material facts as to which there remains a genuine dispute. *See* Order of October 26, 1989. These statements have been provided to the court.

ADA, asking its director of personnel to send him a pilot employment application, and enclosing a resume. Piedmont sent the requested application which Crocker completed, noting in a cover letter that he was a "protected employee" under the Employee Protection Program of the ADA. Crocker brought the application to his July 6, 1982 interview, and filled in the few deficiencies in his application shortly thereafter. *Crocker,* 696 F.Supp. at 687, citing Crocker Deposition at 206–08.

Piedmont Airlines did not hire Crocker despite Crocker's continued efforts to show his interest in employment with Piedmont. From July 1, 1982 until March 1, 1984, Piedmont hired only candidates "protected" under Section 43 of the ADA. Before and after that time frame, Piedmont has hired candidates who are not protected under the ADA. *Crocker,* 696 F.Supp. at 687; Plaintiff's statement of facts, ¶ 6.

In December of 1982 Crocker began to work as chief pilot for Coral Air, Inc., a "non-covered" commuter airline based in the Virgin Islands. Crocker resigned from Coral Air in July 1983, after being promoted to Director of Operations, and Coral Air stopped operating one week later. Plaintiff's statement of facts, ¶ 7. He later worked as a pilot captain for Eastern Metro Express, Inc., a non-covered carrier based in St. Croix, from July 1986 until he voluntarily resigned in November, 1986. *Id.,* ¶ 8. In January 1987, Crocker again found employment as a pilot, this time for Eastern Express, also a non-covered carrier, but quit before he finished ground school in March 1987. *Id.* ¶ 9.

### Analysis

Summary judgment is appropriate if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Supreme Court has endorsed the plain language of this rule, which allows for the determination by the court of actions in which no issue of material facts has been raised.[2] At issue in this case is the duration of a protected employee's first-hire rights. The case is appropriate for summary judgment consideration because the question is one of law.

Under consideration is whether plaintiff's employment as a pilot at Coral Air, a non-covered air carrier, extinguishes his first-hire rights under the ADA. The regulations specify that if a protected employee retires, resigns, voluntarily quits, or is terminated for cause from a covered airline, the employee does not become designated for first-hire rights. Only if the termination is involuntary, and not for cause, does an employee become designated. Further, if a designated employee is hired by a covered airline or rehired by his or her previous employer, then that employee no longer has first-hire rights with other covered carriers.[3] Of course, if that employee is then involuntarily furloughed from her or his new carrier, then that employee would again meet the statutory definition of a designated employee with first-hire rights. Here, from the time Crocker's application to Piedmont was complete until March 1, 1984, Piedmont did not hire nonprotected employees. However, by March 1, 1984, Crocker had already secured a job in his occupational specialty at Coral Air.

Under the regulations, designated employees have the right of first-hire in their "occupational specialty" over non-designated employees at a covered carrier. Occupational specialty means the class, craft, or field of endeavor in which an individual was employed at the time of separation.

---

**2.** *See generally, Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–89, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986).

**3.** *See* Letter from John R. Stepp, U.S. Dept. of Labor Deputy Under Secretary for Labor-Management Relations and Cooperative Programs to Robert Howard, USAir, Inc. of June 2, 1989 ("A designated employee who has obtained another job in his or her occupational [sic] no longer has any rehire rights. Once a designated employee obtains another job, that employee would no longer be furloughed or terminated."). New rights do not arise if a protected employee voluntarily resigns, retires, or is fired for cause under the regulations. 29 CFR § 220.10(b).

29 CFR § 220.01(k). Piedmont argues that the goal of the ADA is to help protected employees get jobs in their occupational specialty if they are laid off as a result of deregulation. Therefore, they argue, re-employment in a non-covered carrier in their occupational specialty should extinguish a designated employee's first-hire rights.

Although the statute does not address when its first-hire purpose is fulfilled, greater understanding does come from viewing the total package of legislation as it was enacted. The original employee protection plan was made up of both a monthly assistance payment directly from the government to workers who are deprived of employment or adversely affected with respect to compensation, and the first-hire provisions at issue here. § 1552. No funds were ever appropriated for the assistance program, and it never became operative. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 681, 107 S.Ct. 1476, 1478–79, 94 L.Ed.2d 661 (1986). However, the original legislation showed that the two programs were to work hand-in-hand to protect current workers in the industry. The duty-to-hire was created partially to lessen the financial burden on the federal government.[4] "The employee protection program fashioned by the committee limits as much as possible the potential expenditure of Government funds, while providing a comprehensive program of protection for dislocated employee." Committee on Commerce, Science, and Transportation, Report on Amending the Federal Aviation Act of 1958, S.Rep. No. 631, 95th Cong.2d Sess. 115 (1978).

The regulations and common sense make it clear that receiving employment in a non-covered air carrier would still act to cut off the monthly assistance. The fact that an employee was hired by a non-covered carrier, if in a "reasonably comparable position," would get the employee off the assistance to the extent that the salary was comparable.[5] It would be a strange result for the government to burden private employers more than itself by letting the government's responsibility end when the protected employees got "reasonably comparable employment" but require continued private air carrier preference until the employee got a "covered carrier" position.

Another factor that weighs in the favor of defendants here is that after the plaintiff secured employment in his occupational specialty, he voluntarily resigned. Plaintiff's Statement of Facts, ¶ 7. If Crocker had gotten a job in his occupational specialty at a covered carrier and then voluntarily resigned, he would not qualify under the ADA as a designated employee. To find that the defendant should still be protected under the ADA when he has voluntarily resigned from a position in his occupational specialty would give him additional protection not contemplated in the ADA. The fact that Coral Air went bankrupt a week later cannot save plaintiff's case because the ADA makes it clear that if a protected employee cannot be designated for first-hire rights if they have "[r]esigned or voluntarily quit *for any reason.*" 29 CFR § 220.10(b)(6) (emphasis added). If plaintiff had waited to be laid off from Coral Air, then he would present a more difficult question which cannot now be considered by this court.

The goal of the employee protection provision was to ensure that the current employees, especially the older employees, were not made to bear the costs of deregulation. Report on Amending the Federal Aviation Act, 113–14. The reason that only covered carriers were forced to hire the

---

**4.** "Any individual receiving monthly assistance payments, moving expenses, or reimbursement payments under this section shall, as a condition to receiving such expenses or payments, cooperate fully with the Secretary in seeking other employment." § 1552(d)(2).

**5.** "Monthly assistance payments ... shall be made each month until the recipient obtains other employment, or until the end of the 72 months ..., whichever first occurs." § 1552(e)(1). "If an eligible protected employee is offered *reasonably comparable employment* and such employee does not accept such employment, then such employee's monthly assistance payment shall be reduced to an amount which such employee would have been entitled to receive if such employee had accepted such employment." § 1552(b)(2) (emphasis added).

protected employees is more likely a result of a contract-like mentality in Congress— the airlines got the deregulation they wanted in exchange for a responsibility to protect current workers. But there is no reason to assume that employment with a new company created as a result of deregulation is less favored than employment with an existing carrier. Deregulation was achieved because Congress and public opinion believed that a deregulated environment, with added competition, the loss of some existing companies, and the addition of new companies, would be superior to the regulated environment. This court cannot find that the companies created by deregulation would be assumed inferior.

The first time that Piedmont hired non-protected candidates for vacancies after Crocker's application was complete was after Crocker had already secured a position in his occupational specialty. Because occupational specialty is a broad term defined as the class, craft, or field of endeavor in which an individual was employed at the time of separation, the plaintiff cannot make a credible argument that his employment as a chief pilot is not in the same occupational specialty as his position as a pilot at Air New England. Therefore, this plaintiff has no claim against defendant, because defendant did not hire non-protected employees after plaintiff had completed his application and before plaintiff secured another job in his occupational specialty.

Hence, for the reasons set forth above, the Court this date shall enter the accompanying Order, deeming the defendant's motion to strike a motion for summary judgment, and granting summary judgment for the defendant.