John W. ACKERMAN, et al., Plaintiffs,

v.

DELTA AIR LINES, INC., Defendant.

Civil Action No. 1:93–CV–0973–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 1994.

Order Granting Reconsideration
Sept. 27, 1995.

---

James J. Seigle, Fayetteville, GA, Stuart A. Goldstein, Miami, FL, Carl H. Hoffman, Hoffman & Hertzig, Coral Gables, FL, for plaintiffs.

William Henry Boice, Stephen Earl Hudson, Kilpatrick & Cody, Atlanta, GA, Joseph Michael Garner, Delta Air Lines, Inc., Law Department, Atlanta, GA, Walter Eric Spiegel, Kilpatrick & Cody, Washington, DC, for defendant.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Defendant Delta Air Lines, Inc.'s ("Delta") motion for summary judgment and Plaintiffs' motion for an extension of time in which to respond to part of Defendant's motion for summary judgment.

## I. STATEMENT OF FACTS

Plaintiffs were pilots employed by Braniff Airways and had been employed as such with Braniff for four years on October 24, 1978. On May 12, 1982, Braniff Airways ceased operations and filed a petition for Chapter 11 of the Bankruptcy Code. At that time, Braniff Airways furloughed its employees, including its pilots.

After being furloughed, Plaintiffs submitted employment applications to Defendant. During the periods between July 31, 1981 and September 23, 1985 and from January 6, 1992 to the present, Defendant did not hire any pilots from outside their work force.[1] Plaintiffs Schueler, Burk, Gest, Good, and Jones accepted positions with other "covered carriers."[2] Whether these positions were within their occupational specialties[3] is debated. Plaintiffs Schueler and Good accepted their jobs after seeking employment with Delta. Plaintiffs Burk and Gest had these jobs before they applied to Defendant. Plaintiff Jones accepted employment as a pilot instructor.

In early 1984, Braniff, Inc., a newly-formed subsidiary of the reorganized and renamed Braniff Airways, commenced operations and recalled the furloughed pilots of Braniff Airways in order of seniority as of their furlough from Braniff Airways. All of the Plaintiffs (except Alessi) were hired by Braniff, Inc., and remained employed there until Braniff, Inc., filed for bankruptcy protection in 1989.

Plaintiffs filed suit on May 4, 1993, alleging that Defendant violated their first hire rights under section 43(d) of the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1552(d). Defendant has moved for summary judgment on four grounds: (1) Plaintiffs' claims relating to applications submitted to Defendant during the periods of July 31, 1981 to September 3, 1985 and January 6, 1992 to the present should be dismissed because Defendant did not hire from outside its work force during those periods, (2) the claims of Plaintiffs Jones, Burk, Gest, Good, and Schueler should be dismissed because they lost their rights of first hire when they accepted employment with other carriers, (3) Plaintiffs' claims based on applications submitted to Defendant after October 23, 1988, should be dismissed since their first hire rights expired on that date, and (4) Plaintiffs' claims should be dismissed because their recall by Braniff, Inc., extinguished their first hire rights. Plaintiffs have responded to all grounds except the first and have moved for an extension of time in which to respond to that one.

## II. AIRLINE DEREGULATION ACT OF 1978

Prior to 1978, the airline industry was heavily regulated by the Civil Aeronautics Board ("CAB"), and airline management was prevented from exercising control over operations decisions. H.R. No. 95–1211, 95th Cong., 2nd Sess., p. 2 (1978), U.S.Code Cong. & Admin.News 1978, p. 3737. In 1978, the Airline Deregulation Act ("ADA") sought to reform the industry by limiting the control of the CAB and allowing more competition. Concerned that the airline employees would bear the burden of this change, Congress adopted an Employee Protection Program ("EPP") as part of the ADA. *See generally Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 680, 107 S.Ct. 1476, 1477–78, 94 L.Ed.2d 661 (1987).

Airline employees who, on account of a "qualifying dislocation,"[4] are "deprived of

---

**1.** Plaintiffs contested this allegation in their motion for extension of time, but the issue was resolved in Defendant's favor.

**2.** A "covered carrier" is an air carrier certified prior to October 24, 1978. 29 C.F.R. § 220.01(e) (1992).

**3.** Occupational specialty is defined as "the class, craft, or field of endeavor in which an individual was employed at the time of separation from a covered air carrier or in which the employee was employed during the 12 months immediately preceding the date of separation." 29 C.F.R. § 220.01(k) (1992).

**4.** A "qualifying dislocation" is defined in 49 U.S.C.App. § 1552(h)(2) (Supp.1994) as:

> a bankruptcy or major contraction of an air carrier holding a certificate under section 1371 of this title, occurring during the first 10 complete calendar years occurring after October 24, 1978, the major cause of which is the change in regulatory structure provided by the Airline Deregulation Act of 1978, as determined by the Civil Aeronautics Board.

employment" or are "adversely affected" in regards to compensation are designated as "protected employees."[5] 49 U.S.C.App. § 1552(a)(1) (Supp.1994). The EPP provides that protected employees who are furloughed or terminated other than for cause prior to the expiration of the ten-year period[6] beginning October 24, 1978, shall have "first right of hire, regardless of age, in [their] occupational specialty, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this title prior to October 24, 1978." *Id.* at § 1552(d)(1).

## III. DISCUSSION

### A. *Plaintiffs' Motion for Extension of Time*

■ Plaintiffs responded to three of Defendant's grounds for summary judgment but requested that this court grant them an extension of time in which to respond to the issue of whether Defendant hired pilots from outside its work force during the periods of July 31, 1981 to September 23, 1985 and January 6, 1992 to the present. Plaintiffs claim that all the records pertaining to this issue are in Defendant's sole possession, and so Plaintiffs cannot adequately respond until they have deposed Defendant. Plaintiffs requested an additional thirty (30) days following the April 25, 1994 deposition of Defendant in which to respond. Since more than thirty days have elapsed since April 25 and Plaintiffs have not filed a response, Plaintiffs' motion is DENIED.

### B. *Defendant's Motion for Summary Judgment*

Defendant has moved the court for summary judgment on four grounds:

### (1) Outside Hires

■ First, Defendant claims that the obligation to hire protected employees under the EPP arises only "when such carrier[s] [are]

seeking to fill a vacancy in the designated employees' occupational specialty." 29 C.F.R. § 220.20(a) (1992); *Alaska Airlines*, 480 U.S. at 687, 107 S.Ct. at 1481; *Crocker v. Piedmont Aviation, Inc.*, 696 F.Supp. 685, 693 (D.D.C.1988). Defendant asserts that it did not hire any pilots from outside its work force from July 31, 1981 to September 3, 1985 and from January 6, 1992 to the present. Defendant, therefore, moves this court to grant summary judgment in its favor on all of the Plaintiffs' claims based on employment applications submitted to Defendant during these periods.

Plaintiffs admit that Defendant had no obligation to hire the Plaintiffs who applied to Defendant in those periods if Defendant did not hire from outside its work force during those periods but contest the factual account as told by Defendant. Plaintiffs claim that they cannot adequately dispute this issue until they have deposed the Defendant. Plaintiffs refer to its motion for extension of time, *supra.* Since Plaintiffs never responded to this portion of Defendant's motion after completing the deposition of Defendant, this court must assume that Plaintiffs concede this point. Defendant's motion for summary judgment as it pertains to the employment applications tendered to Defendant from July 31, 1982 to September 3, 1985 and from January 6, 1992 to the present is GRANTED. Since all of the claims of Plaintiffs August Draftkorn, Roger Duncan, Wayne T. Hoover, and Thomas Kyger are based on applications during those periods, these Plaintiffs are dismissed from the action.

### (2) Accepting Employment with Covered Carrier

■ A protected employee's first hire rights are terminated upon accepting employment with another covered carrier. *Bowdry v. United Air Lines, Inc.*, 956 F.2d 999, 1003 (10th Cir.), *cert. denied sub. nom United Airlines, Inc. v. Hart*, 506 U.S. 831, 113 S.Ct. 97, 121 L.Ed.2d 57 (1992); *Crocker*

---

**5.** A "protected employee" is defined in 49 U.S.C.App. § 1552(h)(1) (Supp.1994) as:
  a person who, on October 24, 1978, has been employed for at least 4 years by an air carrier holding a certificate issued under section 1371 of this title. Such term shall not include any

members of the board of directors or officers of a corporation.

**6.** This ten-year period is the eligibility period of this provision. 29 C.F.R. § 220.01(h) (1992).

*v. Piedmont Aviation, Inc.,* 933 F.2d 1024, 1027 (D.C.Cir.1991). Defendant argues that the five Plaintiffs—Jones, Schueler, Good, Burk, and Gest—who accepted employment with covered carriers have lost their first rights of hire under the EPP and so their claims should be dismissed.

Plaintiffs advance three arguments in opposition to Defendant's contentions. First, while Plaintiff Jones accepted a job with another covered carrier, the job was a pilot instructor position which was outside Jones' occupational specialty of pilot. His rights of first hire, therefore, still existed. Second, since Plaintiffs Schueler and Good applied for jobs with Defendant prior to their accepting jobs with other covered carriers, their subsequent employment should not absolve Defendant of its liability. Third, while Plaintiffs Burk and Gest worked for other covered carriers prior to seeking employment with Defendant, that employment did not extinguish their first hire rights because the ADA confers a status instead of a "one-time coin."

### PLAINTIFF JONES

Plaintiff Jones accepted a pilot instructor position with another covered carrier. Since it appears that Congress did not intend to discourage interim employment while the protected employee is waiting for a comparable job with a comparable employer, *Crocker,* 933 F.2d at 1028, this court holds that the job of pilot instructor is not within the occupational specialty of a pilot. *See Long v. Trans World Airlines, Inc.,* 761 F.Supp. 1320, 1331 n. 6 (N.D.Ill.1991) (the financial provisions of the EPP provide that protected employees are required to mitigate, not by taking any employment, but by accepting substantially similar employment) (citing *Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–3066, 73 L.Ed.2d 721 (1982)). Therefore, the motion for summary judgment as it pertains to Plaintiff Jones is DENIED.

### PLAINTIFFS SCHUELER AND GOOD

Plaintiffs Burk and Gest applied for employment with Defendant prior to accepting employment with other covered carriers. Their rights to first hire, therefore, did not expire until after the alleged violations by Defendant. A violation of a protected employee's rights under the ADA is not forgiven by the protected employee's subsequent employment with a covered carrier. Defendant's motion for summary judgment as it relates to Plaintiffs Schueler and Good is DENIED.

### PLAINTIFFS BURK AND GEST

Plaintiffs Burk and Gest worked for other covered carriers in the interim between their furlough from Braniff Airways and their application to Defendant. Since the first hire right survives only until the protected employee obtains employment with another covered carrier, *Crocker,* 933 F.2d at 1028, this court finds that these Plaintiffs' rights to first hire had been extinguished by the time they applied to Defendant for employment. Defendant's motion for summary judgment as it pertains to Plaintiffs Burk and Gest is GRANTED.

*(3) Expiration of First Right of Hire Provisions*

■ Defendant argues that the Plaintiffs' claims based on applications submitted to Defendant after October 23, 1988, must be dismissed since the EPP expired on that date. *Haggerty v. USAir, Inc.,* 952 F.2d 781, 785 (3d Cir.1992) (the EPP "was designed to be in effect for ten years"). Defendant points to the sunset provision and its corresponding regulation as support for its theory. The "sunset" provision of the Act provides that its provisions "shall terminate" on the last date on which the Secretary is required to make a payment.[7] 49 U.S.C.App. § 1552(j) (Supp.1994). The regulation provides that the effective period of the statute is:

> the period commencing on the effective date of these regulations and ending on the later of: (1) October 23, 1988, or (2) the last day of the final month in which the

---

7. The EPP provides for financial assistance as well as guarantees first hire rights. The Department of Transportation must determine whether the changing regulatory structure was the major cause of the qualifying dislocation before pay-

ment can be made. *Air Line Pilots Ass'n v. F.A.A.,* 3 F.3d 449, 454 (D.C.Cir.1993). No such determination has been made since the passage of the ADA. *Alaska Airlines,* 480 U.S. at 681, 107 S.Ct. at 1478.

Secretary is required to make a payment under section 43 of the Act; except that nothing in these regulations shall preclude the exercise of statutory rights and duties between October 24, 1978, and the effective date of these regulations.

29 C.F.R. § 220.01(g) (1992). Defendant argues that, since the Secretary has never made a payment and will likely never make a payment, the cut off date must be October 23, 1988.

Plaintiffs argue that the October 23, 1988 date does not mark the expiration of the EPP, but the termination of the eligibility period. In other words, those employees who qualified for protected status will enjoy the rights under the EPP indefinitely; those who met and will meet the requirements after October 23, 1988 will never enjoy those benefits.

The court believes that Plaintiffs' interpretation of the ten-year period is the most reasonable. The statute itself refers to the period as a determination of eligibility: "Each person who is a protected employee . . . who is furloughed or otherwise terminated . . . prior to the last day of the 10-year period beginning on October 24, 1978, shall have first right of hire. . . ." 49 U.S.C.App. § 1552(d)(1) (Supp.1994). The regulations support this conclusion by referring to the ten-year period as an "eligibility period." 29 C.F.R. § 220.01(h) (1992). As the court in *Ackerman v. Northwest Airlines, Inc.*, recently stated: "The eligibility period does not purport to bar protected employees from exercising their rehire rights after 1988. . . . Nor does expiration of the eligibility period curtail the duty imposed on air carriers to hire protected employees." 848 F.Supp. 880, 883 (D.Minn.1994). The Department of Labor ("DOL") agrees with this construction and has decided that the duty to hire will remain in effect indefinitely. *Ibid.* (citing DOL Letter to Alaska Airlines dated November 8, 1991).

The "sunset" provision and its corresponding regulation, do not compel a contrary find-ing. Both of these provisions link the effective period to the last date on which the Secretary is obligated to make a payment. The fact that the Secretary has never had to make a payment does not indicate that October 23, 1988, automatically becomes the cut-off date. The court, therefore, concludes that the provisions of the EPP have not expired. Defendant's motion to dismiss those claims relating to employment applications submitted to them after October 23, 1988, is DENIED.

*(4) 1984 Employment with Braniff, Inc.*

■ Defendant contends that the recall of Plaintiffs by Braniff, Inc., extinguished Plaintiffs' first hire rights under the EPP since a "designated employee who is recalled by his former carrier is no longer eligible under this section to exercise the right-of-first-hire." 29 C.F.R. § 220.10(c) (1992). Defendant urges that the labor law principle of successorship be used to interpret the EPP since it is essentially a labor statute. Defendant, therefore, urges that the claims of all Plaintiffs be dismissed.[8]

Plaintiffs do not dispute that recall by a former carrier will terminate a protected employee's right of first hire. They claim that Braniff, Inc., was not their former but their new carrier and that employment with a new carrier does not extinguish the right of first hire. *See Bowdry,* 956 F.2d at 1002 (no continuity of employment between bankrupt Frontier and potential employment at Continental); *Gonzalez v. Aloha Airlines,* 940 F.2d 1312, 1317 (9th Cir.1991) (EPP did not require that terminated protected employee seek reemployment with post-bankruptcy Braniff).

After declaring bankruptcy and ceasing operations, Braniff Airways managed the business as the debtor-in-possession from May 13, 1982 to December 15, 1983. Braniff Airways located a group of investors, the owners of the Hyatt Corporation. In an attempt to restart the airline, Braniff Airways negotiated with the Air Line Pilots

8. This court notes that, if it were to hold that Plaintiffs' rights under the EPP were extinguished upon their recall to Braniff, Inc., in 1984, dismissal of all the Plaintiffs' claims would not be appropriate. Only those claims based on applications submitted to Defendant after 1984 would be subject to dismissal.

Association ("ALPA"); a collective bargaining agreement was executed on June 22, 1983. The agreement included a "side" letter entitled "Pilot Return to Service," which established procedures for recalling the furloughed Braniff Airways pilots. The recall would be instituted according to the seniority system in place at Braniff Airways on May 11, 1982. These pilots were not required to undergo a physical examination if they already had valid FAA certificates.

Braniff Airways' reorganization plan was approved by the Bankruptcy Court on September 3, 1983, and consummated on December 15, 1983. The plan provided that: (1) Braniff Airways would be renamed the Dalfort Corporation, (2) the assets of Braniff Airways would be transferred to BRNF Liquidating Trust for the benefit of Braniff Airways' secured creditors, (3) Braniff, Inc., was formed as a subsidiary of Dalfort, and (4) the Hyatt Corporation would make equity investments and loans to Braniff, Inc., to commence operations.

On December 5, 1983, Braniff, Inc., filed an application with the Civil Aeronautics Board ("CAB") to transfer the certificate of public convenience and necessity from Braniff Airways to Braniff, Inc. The administrative law judge approved the transfer after noting the differences between the two entities. The certificate was dated February 24, 1984.

On December 12, 1983, Braniff Airways assigned the collective bargaining agreement with ALPA to Braniff, Inc. In the early months of 1984, all Plaintiffs (except Alessi) were recalled to employment with Braniff, Inc., where they remained employed until it filed for bankruptcy protection in 1989. While seniority at Braniff Airways was used in the Braniff, Inc., recall, no seniority credit was given to Braniff, Inc., pilots for Braniff Airways service. Braniff, Inc., leased the aircraft originally used by Braniff Airways from BRNF Liquidating Trust. Braniff, Inc., was a smaller airline, with fewer planes and fewer gates than Braniff Airways. Braniff, Inc., had a decreased number of domestic routes and no international ones. Braniff, Inc., logos and uniforms were differ-ent. Pilot pay at Braniff, Inc., was one-half that of Braniff Airways.

The issue of whether Braniff, Inc., should be considered the same entity as Braniff Airways for the purpose of determining "former carrier" status was specifically addressed in *Ackerman,* 848 F.Supp. at 884–87. The court refused to consider Braniff, Inc., as a "former carrier" because Braniff Airways and Braniff, Inc., were two distinct entities. *Ibid.* The court pointed to the DOL determination that "the right to first hire continues until a protected employee is hired by an air carrier that held a certificate before deregulation." *Id.* at 886 (citing 1/3/91 DOL Letter to United Airlines). The court also noted DOL's determination that Braniff, Inc., was not the same carrier as Braniff Airways. *Ibid.* Finally, the court refused to apply the principles of labor law successorship because such application would have frustrated the legislative purpose of the EPP. *Id.* at 887.

This court disagrees with the *Ackerman* court's refusal to apply the principles of successorship. Labor law principles have been applied to "ensure industrial peace, to remedy unfair labor practices and to achieve the goals of Title VII." *Ibid.* Title VII has been used to provide the framework for ADA. *Robinson v. American Airlines, Inc.,* 722 F.Supp. 757, 763 (D.D.C.1989), *aff'd,* 908 F.2d 1020 (D.C.Cir.1990). The situation is one where successorship could be found, since the predecessor Braniff Airways had a collective bargaining relationship with ALPA that it passed on to Braniff, Inc. *See generally Road Sprinkler Fitters Local 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1565–67 (11th Cir.1994). Application of these principles would not frustrate the purposes of the EPP because, if the reorganized carrier were indeed the successor to the bankrupt carrier, the protected employee would have regained employment with their former carrier, a carrier with a certificate from 1978. Labor law principles, therefore, should be applied to the EPP. It was, after all, enacted as a labor protection provision. H.R. No. 95–1211, p. 26 (1978).

Under the doctrine of successorship, a second employer is the legal successor

to the first when there is a substantial continuity of operation. Factors used to determine continuity of operations include: (1) the source of the second employer's work force, (2) the similarity of the two businesses, (3) the similarity of the jobs, the working conditions, and the supervision, and (4) the same production process, product, and customers. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987). Whether the retained employees view their job situation as "essentially unaltered" is also part of the inquiry. *Ibid.*

Applying the doctrine of successorship, this court finds that Braniff, Inc., is the successor to Braniff Airways. First, the business of both employers is the same—they are both air carriers. *Ibid.* Second, the employees of Braniff, Inc., are doing the same jobs as those at Braniff Airways—facilitating the provision of air service. *Ibid.* Third, the majority of the employees at Braniff, Inc., were employees of Braniff Airways. *Hardin's Bakery v. Retail, Wholesale, and Dept. Store Union*, 877 F.2d 1541, 1547 (11th Cir.1989) (substantial continuity of work force is main focus of successorship inquiry). Additionally, the court notes that Braniff, Inc., received the assigned certificate of Braniff Airways rather than one of its own. Therefore, the rights of those Plaintiffs recalled by Braniff, Inc., were extinguished upon their recall. Any claims based on employment applications submitted by recalled Plaintiffs after the recall are DISMISSED. Plaintiffs Ronald G. Brown, Thomas E. Davis, Richard Luthi, Roger Neale, Kenneth Sukla, Thomas Tweeddale, and Lewis Woolery are DISMISSED from the action as all of their claims arise after the recall.

## IV. CONCLUSION

Plaintiffs' motion for extension of time [52–1] is DENIED. Defendant's motion for summary judgment [39–1] is GRANTED IN PART and DENIED IN PART as follows: (1) The portion seeking to dismiss all claims relating to employment applications submitted by Plaintiffs to Delta during the periods of July 31, 1981 to September 3, 1985 and from January 6, 1992 to the present is GRANTED. Plaintiffs August Draftkorn, Roger Duncan, Wayne T. Hoover, and Thomas Kyger are DISMISSED from the action. (2) The portion seeking to dismiss the claims of Plaintiffs Jones, Schueler, Good, Burk, and Gest is GRANTED as to Burk and Gest and DENIED as to Jones, Schueler, and Good. Plaintiffs Robert Burk and Arbie Gest are DISMISSED from the action. (3) The portion seeking to dismiss all claims based on applications submitted after October 23, 1988, because of the expiration of the EPP is DENIED. (4) The portion seeking to dismiss the claims of the Plaintiffs who were recalled by Braniff, Inc., in 1984 because the recall extinguished their rights is GRANTED. Plaintiffs Ronald G. Brown, Thomas E. Davis, Richard Luthi, Roger Neale, Kenneth Sukla, Thomas Tweeddale, and Lewis Woolery are DISMISSED from the action. The parties' consolidated pretrial order is due no later than thirty (30) days after the entry of this order.

So ORDERED.

## ORDER ON RECONSIDERATION

This matter is before the court on Defendant's motions for reconsideration, for entry of final judgment, and for summary judgment as to Plaintiff Alessi. Plaintiff Alessi's attorney has filed a motion to withdraw and a motion to extend time to respond to Defendant's motion for summary judgment. At issue is whether Plaintiff Alessi is a "protected employee" under the Airline Deregulation Act of 1978.

## I. SUMMARY OF CASE

Plaintiffs were pilots employed by Braniff Airways. On May 12, 1982, Braniff Airways ceased operations and filed a petition for Chapter 11 of the Bankruptcy Code. At that time, Braniff Airways furloughed its employees, including its pilots.

After being furloughed, Plaintiffs submitted employment applications to Defendant Delta Air Lines, Inc. In early 1984, Braniff, Inc., a newly-formed subsidiary of the reorganized and renamed Braniff Airways, commenced operations and recalled the pilots of Braniff Airways in order of seniority as of

their furlough from Braniff Airways. All of the Plaintiffs (except Alessi) were hired by Braniff, Inc., and remained employed there until Braniff, Inc., filed for bankruptcy protection in 1989.

Plaintiffs filed suit on May 4, 1993, alleging that Defendant Delta violated their first hire rights under section 43(d) of the Airline Deregulation Act of 1978, 49 U.S.C.App. § 1552(d). Defendant moved for summary judgment against all Plaintiffs (except Alessi), and, on September 30, 1994, this court entered an order granting in part and denying in part Defendant's motion for summary judgment. While this court denied Defendant's motion on some grounds, the court's ultimate conclusion that Braniff, Inc., was a successor to Braniff Airways led the court to hold that "[a]ny claims based on employment applications submitted by the recalled Plaintiffs after the recall are DISMISSED." (September 30, 1994 Order at 15). In addition, the court granted Defendant's motion as to applications for employment received by Defendant from July 31, 1981 to September 3, 1985 and from January 6, 1992 to the present because Defendant did not hire from outside its work force during those periods. The court then dismissed the claims of Plaintiffs R. Brown, T. Davis, R. Luthi, R. Neale, K. Sukla, T. Tweeddale, and L. Woolery. *Id.*

## II. DISCUSSION

### A. *Motion for Clarification/Reconsideration*

Defendant has moved this court to clarify or reconsider its September 30, 1994 order which dismissed some but not all Plaintiffs. Defendant argues that the claims of all Plaintiffs (except Alessi) should be dismissed. This motion is unopposed.[1]

Upon a review of the record, the court notes that all Plaintiffs except Alessi were recalled either in March of 1984 when Braniff, Inc., commenced operations or before they submitted an application to Defendant that was outside of the period from July 31, 1981 to September 3, 1985. Accordingly, all claims of Plaintiffs except Plaintiff Alessi are

DISMISSED. Defendant's motion for reconsideration and clarification is GRANTED.

### B. *Motion for Entry of Final Judgment*

Defendant has moved this court to enter final judgment on the claims of Plaintiffs except Alessi. Since this court will resolve Plaintiff Alessi's claim, *infra*, Defendant's motion is GRANTED as to all Plaintiffs.

### C. *Motion to Withdraw/Motion for Extension of Time*

Plaintiff Alessi's attorneys have filed a motion to withdraw on the basis that Plaintiff's claims are not supported by the evidence. Plaintiff Alessi has opposed this motion and has filed a motion to extend time to respond to Defendant's motion for summary judgment on the basis that his current attorneys could not respond under the constraints of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, Plaintiff has requested that the court grant him a twenty-day extension of time to respond to Defendant's motion for summary judgment beginning on the date that the court rules on the motion to withdraw.

The motions to withdraw and for an extension of time are DENIED. As discussed, *infra*, Plaintiff is not a protected employee. The court, therefore, will not delay the inevitable but, instead, will resolve an issue that will dispose of the entire case. If Plaintiff desires to pursue the matter further, this court will grant his attorneys' motion to withdraw.

### D. *Motion for Summary Judgment*

Defendant has moved for summary judgment against Plaintiff Alessi on the grounds that he is not a "protected employee" under the Airline Deregulation Act. The motion is unopposed pursuant to LR 220–1(b)(1).

#### (1) *Undisputed Facts*

Plaintiff Darrell F. Alessi was employed by SACTA Airlines of Geneva, Switzerland from August of 1977 until January of 1980. Plaintiff was employed by Continental Airlines for approximately four months in 1976.

---

1. Plaintiffs have not responded to this motion. Rule 220–1(b)(1) of the Local Rules of the Northern District of Georgia provides that "[f]ailure to file a response shall indicate that there is no opposition to the motion."

*(2) Legal Discussion*

■ Pursuant to the Airline Deregulation Act of 1978, protected employees who, on account of a "qualifying dislocation," are "deprived of employment" or "adversely affected" in regards to compensation, shall have the "first right of hire, regardless of age, in [their] occupational specialty, by any other air carrier hiring additional employees which held a certificate issued under section 1371 of this title prior to October 24, 1978." 49 U.S.C. § 1552. A protected employee is one who "had an employment relationship with a covered air carrier on October 24, 1978" or who "on October 24, 1978, had four years of employment or four years accrued seniority with a single covered air carrier." 29 C.F.R. § 220.01(*l*). A covered carrier is an air carrier certified prior to October 24, 1978.

In the instant case, Plaintiff Alessi is not a protected employee who qualifies for the "right of first hire" protection under the statute. First, on October 24, 1978, Plaintiff was employed by SACTA, which is not a covered air carrier. 29 C.F.R. § 220 Appendix I. Second, Plaintiff's four months of experience with Continental does not meet the standard of four years of employment or four years accrued seniority with a "single covered air carrier" as of October 24, 1978. Accordingly, Defendant's motion for summary judgment is GRANTED against Plaintiff Alessi.

## III. DISCUSSION

Defendant's motion for clarification and reconsideration [75–1, 75–2] is GRANTED. Defendant's motion for entry of final judgment [75–3] is GRANTED. Plaintiff Alessi's attorneys' motion to withdraw [70–1] is DENIED. Plaintiff Alessi's motion for an extension of time to respond to Defendant's motion for summary judgment [78–1] is DENIED. Defendant's motion for summary judgment [76–1] is GRANTED. The Clerk of Court is DIRECTED to ENTER JUDGMENT in favor of Defendants.

SO ORDERED.